We have a lot of cases on the calendar today, so we're going to hold you to your time and there's no need to use it all up if you think you don't have to. I note that the following case is submitted on the briefs, United States versus Martinez, and the other cases will be heard in the order listed. First case is a habeas case, Douglas versus Canberra, and as usual, the petition is the appellate. Ready to proceed? Yes, Your Honor. Good morning. May it please the Court, I'm Allison Clare, Assistant Federal Defender, on behalf of Mr. Douglas. This case is before you in an unusual procedural posture. In 2002, a panel which included Judge Fischer affirmed the judgment of the district court specifically on the issue of procedural default. But it ruled on the basis of a subsequently vacated opinion in the Bennett versus Mueller case. And when the Bennett court decided to rehear, the panel in this case withdrew the mandate, recalled the mandate, and invited motions. And after Bennett was re-decided, finding that California's timeliness bar is independent after the California Supreme Court's decision in Robbins, but its adequacy in terms of consistent or inconsistent application could not be determined as a matter of law, and Bennett was remanded to the district court. So we moved here for a similar remand to determine consistent application. Now, the government argues that the magistrate judge in this case was better than the panel that affirmed the first time and anticipated the standard that would be applied. How do you deal with that? And even before that time, wasn't it a requirement that there be some specificity as to the inconsistent applications that had to be pledged so that we could tell whether or not, and I haven't seen any evidence of that in any of the filings? Although the magistrate judge did anticipate this court in following the Tenth Circuit's burden-shifting approach, that issue had never been briefed by the parties. And our position at that time, both in this case and in others, was that consistent application was an element of the affirmative defense, which was the Respondent's burden to establish. So we had the You had the magistrate judge's decision when the FNR came out. Correct, Your Honor. We did object to object and raise it before the magistrate judge again. And then you had a chance to take it to the district court. So why, once you read what the magistrate judge told, told the petitioner, they laid it out, why didn't, why wasn't the answer just to follow what the magistrate judge did? That's the judge you're before. So I was always taught you win the case every chance you get. And there was a chance to win it in front of the magistrate judge. Part of the problem at the time, Your Honor, prior to Bannock clarifying what the rules were for Petitioner's counsel in these cases, is that the California court's method of dealing with timeliness issues poses specific problems that made the allocation of burdens unusually significant, because the amount of work that a state court has to do is to look at the text of the opinions. More recently in Powell v. Lambert, the Court clarified that unpublished as well as published cases are useful information for the inquiry. The problem is that in California, unlike Washington and Nevada, the highest court's  from which the duration of any delay between finality of conviction and initiation of state habeas proceedings can be determined. An order from the California Supreme Court, to the extent that we can merely cite authority to place adequacy at issue or establish consistent application, the orders themselves say only denied, a one-word order constituting denial on the merits, or a procedural denial which reads in its entirety, denied due to lack of diligence, or denied, as in this case, C. Swain v. Robbins. There is not even a paragraph of text, as in this Court's unpublished memorandum dispositions, stating 5 years elapsed between finality and the filing of the habeas petition, therefore denied as untimely, or 5 years have elapsed, however we reach the merits. That is almost never in the written decisions of the California Supreme Court. So it is not. Kennedy, did you raise in the lower court that it was too much work? No, Your Honor. The reason it wasn't raised in the lower court is that we were more vigorously trying to pursue the alternative grounds, which I would also suggest is still before you. The memorandum decision previously issued in this case, I assume, will be withdrawn as a housekeeping measure. But the primary argument we were making in district court is a slightly different one than adequate excuse me, than adequacy via consistent application, and that is that California's timeliness rule, as it applies to noncapital Petitioners, is facially indeterminate and in that way inadequate to support the bar. This Court in Morales v. Calderon specifically said that either inconsistent application or facial indeterminacy, in that case both, would render a State rule inadequate to support the bar. And it has always been our position, it's in the briefs, and I make the argument again this morning, that because the standard in California for noncapital Petitioners is, in the words of the district court in the case Carras v. Calderon, which was specifically adopted by the Morales panel of this Court, it is a rule that is standardless, both substantively and as to duration. There is no presumed period within which a noncapital Petition is deemed timely. There is no deadline. Despite the long line of cases saying we don't tolerate substantial delay, there is not a single case that gives a deadline or a presumed timely period in which to file. Given that and the lack of notice to inmates about what would constitute a timely petition, we maintain that the rule is inadequate. So what you're saying, then, is even if you wanted to put the time in, you couldn't tell from the California Supreme Court dispositions what was or was not timely. That's correct, Your Honor. And now that the burden of proof is no longer subject to debate that's been established by this Court, and we acknowledge that we have to at least come up with a few cases, I assume, in district court to show, and I do – this is not on the record, Your Honor, so I state this only in the spirit of a proffer. But we have been attempting to gather data about – and it is raw data from the files of the California Supreme Court about how many petitions after a certain period of delay are denied on the merits or for procedural grounds. And I have some spreadsheets in my briefcase that suggest to me that there is inconsistent application, but I need to go back and look at the raw data in those cases to assure myself that those are noncapital cases which are not about parole or prison discipline and be able to present some figures to the district court. It was never our understanding until Bennett that that would be our burden. And I'd like to resume for the rest of my time, if I may. That's fine. All right. We'll hear from the State. Daniel Bernstein, Deputy Attorney General, praying on behalf of Respondent, Mr. Canberra. I think this Court has identified the key issue here, which is one of notice. Was the Petitioner adequately put on notice as to what his burden would be in the issue of procedural bar? We maintain that he was, through the magistrate judge's findings and recommendations. The statute on magistrate authority 28 U.S.C. 636, as well as the Federal Rules of Civil Procedure, provide that a district court will review de novo any objections to the findings and recommendations, and also the district judge has the authority to recommit the matter to the magistrate judge with further instructions. Now, Petitioner says that they didn't know that because the way that the California Supreme Court orders are issued or written, that it was hard for them to determine what the timeliness requirements were. But the magistrate judge put them on notice that he thought that the State supreme court order was adequate and sufficient. He thought that it was time-barred. And he instructed the Petitioner that they had some burden to put forth some specific factual allegations to show that the bar was inadequate, not regularly or consistently applied, and they failed to do so. Was there any law in our circuit that would have put them on notice that they had to do that, regardless of what the magistrate judge said in this particular case? There was no law in this circuit at the time. However, the magistrate judge, as was pointed out, adopted the Tenth Circuit's standard. Right. So in working this up, counsel has said, look, we came into this proceeding under what we thought the law was, and there was a different issue we were focused on. The magistrate judge then looks to the Tenth Circuit, and we're supposed to come up with these specific instances of inconsistency. And to do so is incredibly difficult, because the California Supreme Court, on its face, on these orders, doesn't give you much to go on. What's the response there? Why shouldn't this go back to the district court now to give them a chance to establish specific inconsistency, since now it is clear that the circuit is going to follow what the magistrate judge intuited would be the right approach? Well, my response to that is that whether this circuit had adopted the standard or not, the Petitioner knew that he was faced with that standard in this particular case. And if he thought he needed more time. When, yeah, but when was he put on notice that he was? In the findings and recommendations. But that was sort of through the proceeding, not at the front end. And what counsel has told us here today, and I don't know whether you disputed or not, that to put that, to come up with that kind of information at that stage of the proceeding would have been difficult, because it takes resources and time and creativity, apparently. It isn't as if you can just pull them out of the reports and say, see, here's A, here's B, here's A, here's B. Yes. Is that an accurate characterization of California, the state of how you prove inconsistency or how you'd be able to prove inconsistency in California? I suppose it is. There are two methods to show inconsistency. One is a state court opinion that, I guess, says on its face that it's inconsistent. The other is to put forth some cases to show it was inconsistent. I understand we're in the second category in this case. Correct. Yes. I would direct this Court to its opinion in Fields v. Calderon, a 1997 case, in which this Court explained that the traditional method of showing inconsistent application of a state procedural bar is to provide a representative sample of cases in which the default was either invoked or at least where it arguably might have been applicable but was disregarded. But that's when it is known that you have the burden. And so in this case, it was Bennett that established, although the magistrate judge in this case, in the course of the proceedings, as I understand it, anticipated it. So I'm just thinking as a practical matter. You're talking about counsel would come into a case and then, in the midst of the case, find out that they've got a burden to come up with some information that is difficult to get. So what should we be doing with that here? Should we kick it back to the district court to let the district court evaluate the circumstances or just decide as a matter of, gee, you know, too bad you got noticed midway through this trial and didn't come up with it? I think even before Bennett was decided, habeas petitioners knew that when procedural bar was raised as an affirmative defense, that they had some burden, some responsibility to come forward. So that has been the law in this circuit for some years now. Bennett, for lack of a better term, refined that standard, that burden, by saying that once the petitioner comes forward with some evidence to show that the bar is inconsistently applied, then the ultimate burden shifts back to the State to show that it is consistently applied. So our position would be that even before Bennett came down, they had, particularly with a petitioner who's represented by counsel, that counsel should have known that they had to provide some evidence and that the magistrate judge merely put that to, put the fine points on that and told them what the burden-shifting responsibilities would be after they had provided some evidence. They never, they never attempted to even do so. What was the timeline in this case between the FNR and the deadline for objections to the FNR? Typically, there's a 10-day period. In this case, I believe the petitioner requested and obtained a 30-day extension of time. They did not, in the request for an extension or in the objection, say that they needed more time to satisfy their burden. They just continued to argue the same points that they made in their traverse, which was that the, the citations to Swain and to Robbins were not clear, were vague. And therefore, and therefore, they, they didn't think the bar applied. I would like to, I would like to also note another case that this. If you just, if you were to tell what would be the case in our circuit that made it clear that even regardless of Bennett and the magistrate judge's ruling here, that it was clear that they had to allege some instances of inconsistency going in that they, that they ignored. What case would you cite? Well, I would say Fields is one, and then Wood v. Hall, which is a case that was cited in Bennett, also talked about. And in that case, there was a procedural bar arising out of an organ. That's an organ. Yes. And in that case, the Court said that the Petitioner had not presented sufficient evidence that the State procedural rule was inconsistently applied. Okay. And in addition to that case, I would also direct this Court to its opinion in Boyd v. Thompson, which is a 1998 case in which this Court held that a district court has the authority sui sponte to find procedural bar, and the notice in that case was adequate because it was based on a magistrate judge's issue of an order to show cause in a subsequent report and recommendation. That put the Petitioner on notice. This Court found that even under those circumstances, a district court could raise and apply the bar on its own accord. Unless there are any other questions, I would submit it. No. All right. Thank you. Thank you. Thank you, Your Honor. Your Honor, prior to Bennett, we, Petitioner, understood that it was our burden to dispute the adequacy of the bar, and we did so on several grounds. While it's true that we did not cite a specific instance of another case with similar facts to Mr. Douglas' in which the rule was applied inconsistently with the result here, that is because it is impossible to find California decisions which include the facts from which you can tell that the cases are similar and that a different result was reached on similar facts. Is your opponent correct that in your request for an extension before the magistrate judge that you did not include a request or did not support that request with facts indicating you needed to do research on this element of what the magistrate judge had said? Well, I haven't reviewed that request for extension of time recently. My memory, Your Honor, is that we did not specify at all exactly what it was we were going to do, but that during that time we did what research we could, looking to the decisions of the State court, which is what at this time the Ninth Circuit was telling us to do when we found those decisions, insofar as they were accessible to us, either in published or unpublished form, did not offer the relevant data. So instead, we rather globally said we dispute that this is applied evenly. We also dispute that it can be applied evenly, which dovetails into our other argument, which is that facial indeterminacy alone renders the rule insufficient. So how you said you got spreadsheets and what are you telling us you do, one does, in your position under this regime now where you have to show clearly. Let's assume it was never clear. Okay, now you're saying you've told us it's impossible, you've told us it was difficult, you've told us you've got something. I'm trying to understand, not having been in the position, what do you look to to find out whether comparable cases have been treated inconsistently? What's your source of data or information? The source of data would be the actual case files in the California Supreme Court. To be very frank with Your Honor, the data that I have now was developed by other counsel in another case, Saffold v. Nolan, which you're all familiar with. It went up to the Supreme Court and back on the issue of tolling during gaps in the State proceedings. So the question is not the same. I'm not sure how much of their data even applies in my context. And I would have to go to the California Supreme Court and pull the original files of the 142 cases that were analyzed in Saffold and see how many, if any, of them fit our facts. I don't have that information. I can tell just from glancing at the summary numbers from Saffold that there are other cases that involved three- to five-year delays, at least on the face, from finality of conviction to the filing of a habeas petition that were denied on the merits by the California Supreme Court. Whether I can in good faith represent that those represent an application of a timeliness rule inconsistent with Mr. Douglas, I can't tell you not having looked at it. But we certainly, prior to Bennett, would never have guessed we would need to do that. Bennett itself did not indicate in the decision remanding that the Petitioner in that case had made any specific showing of a result in another similar case that was inconsistent with his. The Court merely said, we can't tell on the record before us and we certainly can't tell as a matter of law whether this rule is consistently applied, so go back to district court and figure it out. Certainly, there were many habeas lawyers who hoped that the Bennett case would resolve this matter at some level so that we would have a clear rule of law. But as far as I know, upon remand, Mr. Bennett has remained unrepresented. I have no idea of what – whether that case will result in a decision about adequacy which will return to this Court. But in any case, we seek remand, so we may now do that work. Roberts. Can I ask a counsel for the State, no, counsel for the State, if he disagrees with counsel's characterization of how one would prove inconsistent application? Is she correct as what she has said? I'm not questioning her veracity. Maybe you know some other methodology. I think she's correct, but with the caveat that this Court has said, I think it was in Bennett, that in performing that analysis, you cannot go into the pleadings. You cannot go into the record. You have to stick with the – with what is in the text of the opinions, both published and unpublished. So if it's not in the opinions, you're out of luck. I think you probably would have to just look at the circumstances. This said it was denied after so many years. This got to the – on procedural grounds versus on the merits. But I don't think you can look to see whether there was, for example, a sufficient reason for the delay to excuse the timeliness based on what's in the pleadings. Okay. Thank you.  Thank you. We thank both counsel. This case is now submitted for decision. Next case on the argument calendar is United States versus Rojas Flores.
judges: Tg Nelson, Tashima, Fisher